plaintiff. The issues in this case are, first, whether the filed rape doctrine bars contract and fraud claims when an insurance company sells an inflation protection feature on a long-term care insurance policy without disclosing that the premium could later rise due to inflation among other factors. And if I ask you, Mr. DiStefano, can I start out? I'm going to have similar questions for Defense Counsel as well. But I've got a major concern here about choice of law and what law applies here. What law do you think applies and why? Well, I think it probably depends on the precise issue that we're discussing. If we're talking about the filed rape doctrine itself, then I think the answer would be that D.C. law governs the rights of the group, D.C. being the defendants in their brief seem to assert that the filed rape doctrine is a creature of federal common law. And that may be true when it regards federal regulatory actions and rates. But as, you know, for example, the case Clark v. Prudential insurance company cited in the brief demonstrates, when you're talking about insurance regulations, which are a creature of state law, the filed rape doctrine is likewise a creature of state law. And it seems like to have any coherent relevance to insurance issues, it would need to be the state that applies to the group as a whole or the jurisdiction, in this case, the District of Columbia. Otherwise, you would have... But to figure this out, it's a state law case, you know, so Illinois' choice of law principles will apply here. What in Illinois' choice of law principles leads you to conclude that D.C. law applies? Well, I think we rely primarily on the Prudential v. Friedrich case and the restatement second of conflicts of laws for the provides the law that governs the members of the group for the simple reason that the rights of the group should be uniform throughout the group. And in the case of group policies, you know, issued by their two employers, this works fairly well where employees might be scattered, but the employer will have a principal place of business where the policy is delivered. Well, and I, you know, there's a case called Hofield from the Illinois Supreme Court where it cited that particular comment and the restatement of conflicts favorably. So you may well be right. Of course, it wasn't dealing with long-term care insurance, but I think your argument here is that group health insurance and life insurance seems to be more analogous than, say, you know, casualty insurance. That's correct. And an important point to bear in mind with all the issues in this case is that long-term care insurance is a relatively recent innovation, and it is a somewhat, you know, analogous to a hybrid of life and disability insurance. It is both a financial planning product and, you know, a form of loss coverage. So is it your contention, counsel, that the D.C. law applies to rates nationwide then under this policy? Yes. And so is that, we're not specialists in insurance law, at least I'm not, but in this case, Washington's commissioner seems to have tried to, or at least asserted authority over pricing in Washington State. Is that common in nationwide group policies, whether we're talking about life, disability, or long-term care, just as a matter of practice? Well, I think if you look at the authority of the various regulators, they're somewhat overlapping for the simple reason that even though a policy is delivered in one jurisdiction, you might have certificates under it issued to individuals in another jurisdiction. And I think that some care must be taken, I think, on the part of both the insurance companies and the regulators to navigate those overlaps. But the fact is that the D.C. retains jurisdiction over the master policy as well as certificates issued to people within D.C. So our view of the world is that the D.C. regulator is essentially the primary regulator for the policy. Now, could a conflict arise between D.C. and Washington requirements that might need to be worked out, I suppose. But someone has to be driving the bus, and D.C. is the natural, logical choice. You say someone has to be driving the bus. In actual circumstances, one of my former employees for the court, federal government, they had a similar policy where it was for home care. This employee that I had, who had signed up, got a note about a year later saying that the government has calculated and said this won't work, this premium is not near enough. They let her keep hers, but they canceled the whole program. And my question to you is then what goes on when someone has something that they're paying a premium for, and this one is an accelerated one, what's causing this to come up and say, well, you haven't been paying enough, therefore you're going to have to pay a lot more when they had counted on that amount for the rest of the term. And the same thing happens for something of a disability, I suppose. But this is where I look at this whole situation where just out of the blue, they've basically doubled the premium, and it's based on what I've heard, I guess, the file rate doctrine in Washington. It seems to be pretty well in balance, at least the way I see it. Well, and granted that that issue is a little bit beyond the scope of the briefing below and in this court, but the answer I could give right now is that my understanding is that there are backstop guarantee associations and so forth that are there to prevent insurance failures, essentially. But I think it also broaches a question which I think is maybe at the heart of this case. Can an insurance company bind itself contractually and through its representations as a matter of fraud? Can it bind itself as regards future premium increases? And with respect to the long-term care product in particular, I think this is a very special concern, and the answer should be yes for the simple reason that the value of this product, the nature of the product, is so inextricably bound up with the price and the price over time. I mean, price is always a very material term, but when you're talking about the purposes of long-term care and the value to the consumer and the opportunities tasked up by a consumer who might be investing in this type of product for decades. I would like to return to Judge Hamilton's question when he asked you then if the insurer erred by going and getting permission for its rate change from Washington state and presumably from all the other states in which the various insureds lived. He asked you how it typically works. I mean, you're answering Judge Manuel right now by pointing out the unique features of a long-term care policy, but one might say the same thing about disability, life insurance, you know, and on and on. So how does it work in the industry? Because this choice of law question isn't just about what filed rate doctrine, if any, governs the suit, but if Washington, D.C. law applies as opposed to Washington state law, then that means that insurers always have to go to that particular state to get their rates approved because that's the law that would apply in any subsequent dispute. So what do insurers typically do in other kinds of policies that have been around for longer than long-term care? Candidly, I'm not familiar with the process for increasing premiums on life insurance policies and haven't heard of any such. My just general understanding had been that such premiums were a matter of bargaining, but what I would say as a regulatory matter based on the regulations in this case is that the premium would be submitted to D.C. and then perhaps as a separate overlapping matter submitted to Washington in the context of this policy is slightest in D.C. and the Washington regulator would be cognizant of that rather than setting a different premium for part of the class. In a minute, you'll be into your rebuttal time. Could I ask you one other question, counsel, and that is you mentioned that one possibility of relief in this case would be rescission. Is that right? Yes. And is it your contention that rescission would not encounter filed rate problems, even under strong versions of the doctrine? Exactly. I think that all of our contract remedies avoid the filed rate because they don't seek to avoid a filed rate. They seek to enforce the one that was bargained for. Well, that may or may not be right because of the provisions that do at least seem to allow for some rate increases, but if the eventual decision were that D.C. law controls and controls price increases for all employees, how would that change the shape of this case? Well, in the first place, it's unclear that D.C. would apply the filed rate doctrine to insurance, and we contend the federal court should not import the doctrine into D.C. Second, it would entitle all the policyholders under the Nationwide Group to that uniform premium that was established in D.C. And it's important to note also that the inflation protection theory is relatively independent of this choice of law question because it stands more on the footing of consumer deception and the importation of a contract term reflecting the nondisclosure that inflation protection would not protect you from inflation applied to the premiums. Thank you. Do you want to save the rest of your time for rebuttal? I would, Your Honor. Thank you. Okay. Thank you. Let's see. Next up is Mr. Austin for defendants. Good morning, Your Honor. And may it please the Court, I'm Brent Austin, and I represent the Casualty Company. I'll jump right into the choice of law issue. This is an unusual case because the plaintiff is asking essentially a Chicago court to find that a jurisdiction other than the jurisdiction that passed on this rate increase may be able to undermine the filed rate doctrine. Well, they're in Chicago. They're in Chicago because that's where your client is, right? Well, yeah. That's why it's venue here. Okay. So could you address this problem of a national group insurance policy, in particular with respect to Section 192 of the Restatement Second of Conflicts, which does seem to contemplate in its comment H that in such situations the choice of law would be where the employer is located and where the master policy was issued? I don't think that that restatement provision is relevant to the choice of law question that we're talking about here because the decision about whether or not the filed rate doctrine applies to a given regulatory scheme is almost always decided by a court in the jurisdiction that created the regulatory scheme. And in this case, the regulatory scheme that we're talking about. That kind of begs the question, though, because if I'm understanding Section 192 and its application to life insurance and disability, and Judge Barrett suggested this reasoning might easily extend to long-term care, you really – a nationwide employer wants uniformity for its employees. Right? And the only way to get that is to say that one state has – takes the lead role in interpreting the policy and in deciding on things like premiums. I think an answer can be found in the CNA rate filing that was submitted to D.C. And I can give you some broader context on how these rate increase issues come up. But generally, you're correct. The restatement suggests that for a contract claim as opposed to a fraud claim, the law, the status of the policy applies. Under any choice of law analysis, though, I think the fraud claim in this case, Washington law would apply. And so what the plaintiff is setting up is a situation where a fraud claim would be subjected to the filed rate doctrine because it's unquestionably recognized in Washington but would not be applied to the contract claim because we're – But what if the fraud – the premise of the fraud claim is that Washington doesn't have any business deciding this question about the rates? Well, I think it's important to recognize that Washington itself has recognized that it doesn't have nationwide jurisdiction over this rate increase because – No, the question is whether D.C. does. I'm sorry. I meant D.C. In the CNA rate filing to D.C., CNA was required to disclose how many affected certificate holders were in D.C. It instead described them as policyholders, and the D.C. regulator itself corrected CNA and said, no, you don't have that many policyholders. You can't have that many groups cited in D.C. You must mean D.C. certificate holders. CNA responded, yes, that's correct. So D.C. recognized that its jurisdiction over the rate increase was limited to D.C. certificate holders. And CNA explicitly states to D.C. that the new premium rate – and this is cited – this is the rate increase filing that's cited by the plaintiff in his reply briefing, footnote 41. The new premium rates will be applied to all insureds under group policies that were cited in your state, that is D.C. Except insureds under the group policies cited in your state that were issued certificates in another state that is an extraterritorial jurisdiction. So is it your contention then that – let me ask, is it your contention that it's impossible for an employer to buy a nationwide policy for nationwide employees with uniform rates? Yes. I mean, there will be states that will take no position on the rate increase and will defer to the District of Columbia's decision on the rate increase. There are other states, so-called extraterritorial states like Washington, that insist on an independent review and approval of the rates. And it would be illegal for CNA to charge a rate to a Washington certificate holder that wasn't approved by the Washington Office of Insurance Commissioner. So does Washington know that the master policy jurisdiction said the limit is 10 percent? Yes. I mean, it was disclosed in the rate filing to Washington that these are group policies. The request was limited to the certificate holders in Washington for it, and it identified the policy forms that were issued. And there were multiple policy forms affected by this rate increase. And the one that this lawsuit is about is just one of many that were within that rate file. I think the McCarthy decision answers the choice of law question relative to the filed rate doctrine. Because the premise of the filed rate doctrine is that jurisdictions create regulatory schemes and defer to the expertise of regulators in those schemes to pass on issues such as rates. And such a scheme was created in Washington. And the Washington Supreme Court, as the relevant jurisdiction as to that scheme, has concluded that the filed rate doctrine applies. And, again, I go back to the logic that the plaintiff has set up doesn't lead to a coherent result. Because if D.C. law applied to the contract claim and this court were to conclude that D.C. does not follow the filed rate doctrine, something that the plaintiff has not briefed or really supported with any legal authority at all. And, Counsel, on that point, let me just ask you, I mean, this is a pretty critical question, the choice of law question. Did you not brief this below? I mean, there's no discussion in the district court's opinion. Your briefs just gloss over it and kind of cite to many different jurisdictions. Well, I think the issue of choice of law was discussed below. I mean, the premise of D.C. law having to apply to the contract claim and the idea of that being relevant to the filed rate doctrine analysis has gotten a lot more discussion in the plaintiff's briefs before this court as opposed to the district court. But the analysis, I think, turns on whether or not the regulatory regime has in place a rigorous process for evaluating rates. And I don't think there's been any disagreement among the parties that Washington has such a scheme. And there can't, I don't think, be any disagreement that Washington clearly believes that it had jurisdiction over the certificate holders under this group policy. And I think that answers the question of whether or not the filed rate doctrine should apply to the OIC's decision. If this was a filed rate doctrine dispute over the D.C. rate increase, if Mr. Gunn instead was saying the D.C. rate increase was too high, then you'd have to have a meaningful discussion about, well, D.C. hasn't talked about the filed rate doctrine before. So we have to do an independent analysis of whether or not the filed rate doctrine would apply to the D.C. regulatory regime. Does the D.C. regulator have to defer to the Washington regulator, given the nationwide dimensions of this policy? If it's an extraterritorial jurisdiction like Washington, yes. What does that mean when you say extraterritorial? How do I identify that? It's a concept that arises because group policies are unique, because you've got a policy that's cited in one place, and you have group members, certificate holders that are spread out in different places. I understand the problem, but you said apparently some states defer to the master policy state, and others you described as extraterritorial. How do we identify who's who? It can be difficult, and the first place to look is in the regulations. In the regulations for Washington, it clearly states that the Washington Insurance Code governs all insurance and insurance transactions in the state or affecting subjects located wholly or in part to be performed within the state. Right there, Washington is taking the position, through its legislation, that if the insurance affects Washington policyholders, this code has jurisdiction over it. Clearly they have the constitutional power to do that. The question is, how does it play out in the case of conflicts? That's where I'm struggling, and I'm wondering whether we might need some additional briefing on this. I'm happy to supply that if that would help the court. Frankly, I don't believe this particular situation has ever arisen before, and I don't think the plaintiff really has supplied any argument or legal authority for his position. I think it's a pretty bedrock proposition that states regulate rates at a local level. The extraterritoriality issue goes to the question of whether or not a state which has jurisdiction over the rates within the state, whether or not that state is willing to defer to the rate decision of the regulator where the policy is cited. As I said, there are some states that do defer to it, and there are other states that do not defer to it. One of the states that does not defer to it is Washington. I'll just say that I'm going to be inclined to suggest that we invite some further briefing, and frankly, I'll just tell counsel on both sides that some input from potential amici might be useful in terms of, I think there's a National Association of Insurance Commissioners. This is a pretty fundamental problem about pricing of group policies like this, and it sounds pretty tangled, frankly. Well, if you want to add what's tangled, you can go to every state where car insurance is mandated, and we all know that if you're in some places other than a big city where maybe there are more wrecks, that your liability would be different. I know I inject something that seems to be another area, but it is. It varies very widely about what kind of risks there are from one place to another, just as for cars, and I think the same is for people. And whether it's long-term care or life insurance or various and sundry other things where somebody pays a premium and they can start paying a premium when they're a lot younger, which would normally be a lower premium as time goes by. This person did exactly that, and that's what he's claiming. He jumped up on him when he was counting on something else and paid a premium for it. That's all I'm saying. I'm not asking you a question. Could I ask, counsel, is there any choice of law provision in the master policy? I don't believe there is, Judge. And could you address the potential application of the filed rate doctrine in one form or another to a claim for rescission? I think the filed rate doctrine would apply in that context as well, because what the filed rate doctrine holds is that the filed rate, the filed and approved rate controls the party's agreements. Now, and that the parties are presumed to know both that the filed rate exists and also that the filed rate is subject to amendment. And that's been, that's been found in Seventh Circuit case law as well as case law around the country. Do you have any, specifically it deals with rescission as a remedy? I don't believe so. There may be a rescission element in one of the cases, but I don't recall seeing it discussed. I guess what I'm struggling with in this case, honestly, Mr. Austin, is that we've got the policy language that talks about uniformity for premiums on everybody in your, basically your risk class. And I don't know why I wouldn't, as an employee of a national employer, read that to say premiums will be uniformed nationally. But it does not actually say that. I mean, as I'm sure you're aware, it just has the tables and it clearly ties the rate to your age and the amount of your benefit. But not to geography. But the policy prominently states that premiums can be increased. So I don't think it's a reasonable inference to say that from those rate tables I surmised that my rates either wouldn't be raised at all or that there would be a particular process by which they would be raised. Am I overlooking? I thought one of the essential things the plaintiff was alleging here was, in essence, you won't change your rates based on age or health, but premiums will change uniformly for people like you. Right? I'm paraphrasing. And without any suggestion that there would be geographic differences. It does not suggest that there are geographic differences. However, there's, I think, a real issue about whether or not that's a material issue to somebody buying a policy in 2000, is whether or not the District of Columbia Insurance Department or the Washington Insurance Department is going to rule on a rate increase 20 years in the future. You don't think rates 20 years in the future on a long-term care policy are going to be material to an insurer? I think the rates are definitely material. What I'm saying I don't think is material is the notion that I only bought this policy because I thought the District of Columbia could be the only regulatory body to rule on a rate increase. You think it might be material to the employer that's trying to treat all of its employees fairly nationally? The employer isn't part of this case and hasn't raised a complaint with a rate increase. It's been the certificate holder that's complained about it. We've received no complaint at all from the employer. I understand that, but we're talking here about the terms of the master policy, correct? We are talking about that, yes. Okay. You've got a minute left. I guess I'd conclude by just emphasizing the fact that under Washington state regulations, CNA had no choice but to ask for this rate increase in Washington and get it approved. It was partially approved after extensive analysis. CNA had no choice but to do this. There's nothing in the Washington regulations or any action that DC has taken to suggest that it ever believed that it has nationwide jurisdiction over any aspect of the rates on this policy. Once we do the supplemental briefing that the court is asking for, I think it'll be clear that there isn't any material case law that would suggest that nationwide insurance rate regulation exists anywhere in the country. It just doesn't. It's been discussed, but it's never happened. With that, unless there are more questions, I'll see you for the rest of my time. All right. Thank you very much. Mr. DiStefano, I gave Mr. Austin a couple of extra minutes. You have up to five minutes for rebuttal. Thank you, Your Honor. I'll just begin with the issue of the conflict between the two jurisdictions, which seems central. I bring it back to the idea that this case is about the conduct of the insurance company and the promises it made, what it wrote in its contract, what it told its insureds, and then its decision to seek an increase, what it told those regulators, and how it went about setting up the increase that it did. Because it's a question about the insurance company's actions, that's what supports the breach of contract case, somewhat irrespective of how different regulators might be able to interact. But in the first instance, Continental did set up a nationwide premium class under which everyone understood that there would be this uniformity and that there would not be cross-subsidization of some unlucky policyholders in one jurisdiction by unlucky policyholders or certificate holders in another. Can I ask you about that, counsel? I don't know exactly what kind of a class you all want to represent here, but the issue of cross-subsidization would seem to imply that something less than all policyholders nationwide might be the appropriate class or there might be a need for a subclass. That might be the case in its infancy, obviously, and malleable in that regard. Okay, thanks. But in terms of crafting the ultimate release, it may be in need of a subclass. But as far as this element of their conduct, the insurance company could have navigated differently or made a different choice in terms of not implementing a premium or perhaps telling Washington, hey, we made a contractual commitment to our insurance and we have restrictions with respect to where the policy is slightest. And we can't actually implement consistent with those obligations anything that varies from state to state. I don't think it's conceptually impossible for this to either get worked out or else for the insurance company to simply be bound with the policy and the rate that it's sold up front in the way that it chose to do that. So that's the first point. And as regards the question of where the sort of smattering of choice of law, case law that is cited in the briefs, I think that the fact that the doctrine is not very well developed at the state law level is further evidence of what a bad fit it is. This idea grew out of railroad tariffs and federal rate making and eventually sort of bled out into the insurance realm at the state level. But it's reached a point where it's a very awkward fit for long-term care policies where the premium is really embedded with long-term interests and the value of the coverage. So regarding supplemental briefing, of course, we'd be happy to develop the points mentioned by the court. And if there are no further questions, I'll submit. All right. Our thanks to both counsel. And the case is taken under advisement with the provider.